v. Patrobras America Incorporated v. Vicinay Cadenas May I please the Court, Stanley McDermott, for appellant Petrobras. The District Court should not have granted summary judgment. The District Court's reason for dismissing Petrobras' LPLA and retribution claims is an error of law, that although the District Court admits that the release and waiver provisions in Article IX of the EPCI contract are unenforceable in the event a party acts willfully, wantonly, and recklessly within the meaning of Louisiana Civil Code Article 2004, that nonetheless the Louisiana Product Liability Act, what I call LPLA, precludes Petrobras from proving that Vicinay acted recklessly. That is an error of law. Secondly, there is the related question of fact that the jury must decide. Before we get to the meat of it, can you just take your best shot at telling us how the retribution claim is preserved? The retribution claim is preserved because the defense relying upon the release and waiver provisions in the EPCI contract are invalid and that sustains the retribution claim. Then the retribution claim is always preserved because of the fact that it was not the subject of the summary judgment papers that Vicinay submitted. The issue never did arise in the District Court. The issue did not arise until the case was passed through. But when you have a defense to offense, let's take an easy area of statute of limitations where the discovery rule applies. So the other side proves that you sued, you know, a week late, but then you have to come back with the discovery rule. If you don't, if you just sit silently and argue about whether it was a week late or not, then how can you say on appeal, oh, well, wait a minute, the discovery rule applies? Well, you can, you can, if it was never a part, if it was never a part of the proceedings in the District Court, then yes, it can be, it can be raised here. And that is the situation here. This in a, when a motion. If it was never a part, then you can or can't raise it? I just want to make sure I heard you. That it can be, that it can be raised here if it was never a part of the motion for summary judgment in the District Court. Never a part of the motion. But what I'm saying is let's just take a different case, hypothetical case, and there's an argument about statute of limitations. They file a summary judgment, statute of limitations bars this case. You say there's a dispute about exactly what day the wrongdoing happened. So you argue that, but you never say anything about the discovery rule. Now, upon appeal, you stipulate, yes, it occurred on that date that's two years and one day and one week, or however many years and one week since, but the discovery rule applies. Now, can you do that on appeal having not raised it in the District Court? Well, that, that, I mean, that example, Your Honor, I think is, is much closer to the adjudication of the issue in the District Court. I mean, if, if, if it's fairly, if it's fairly opposed, if in fact the parties are opposite, arguing, as you suggest, the applicability of the statute of limitations, then the discovery rule, if it's part and parcel of that, of that belief or that claim, then, then yes, you could see that it would be waived. But this case is vastly unlike. The reason I'm analogizing it is because the way, the only way I could see you could win this appeal is if we viewed this as you filed a lawsuit under the Louisiana Liability Act, they defended with these releases and waivers from the contract, and you had a defense to the defense of, but they were reckless, and therefore that doesn't apply. That's similar to my analogy of commit the negligence, but then there's a statute of limitations, but there's a defense to the statute of limitations of the discovery rule. And so that's why I'm asking it that way. And so they moved for summary judgment on these release waiver, you know, the Section 9 stuff, as to the whole remaining case, which was just the Louisiana Products Liability Act and the retribution. That's all that was left at that point. Right. And then you came back and argued about the Louisiana Products Liability Act, but never said anything about this issue of the retribution being somehow different. Because it was never raised. I mean, the answer, the answer is it was never raised. It was never raised in the district court. It was never raised in the summary judgment papers. Everything concentrated on the... But if I move for summary judgment as to causes of action one and two on my one defense, how can you say I didn't raise it as to cause of action number two? Well, it applies. It applies to both. It applies to the LPLA claim, and it applies to the retribution claim. If the affirmative defense is invalid, because the affirmative defense is invalid on grounds that there was recklessness in the manufacture of the tether chain, then that sweeps both ways. It affects the LPLA claim, which is then unenforceable, and it equally affects the retribution claim. And I think it would be illogical to say that if the briefing in the district court concentrated entirely on the LPLA, but for reasons that extend equally to the retribution claim, that there was not fairly preserved for appeal the retribution claim, which survives for exactly the same reason that the LPLA claim survives. What you said... Okay. That's different. If you're just saying I should win the whole case, fine. I think you have preserved that. But if you're saying retribution is different, which I thought your brief made an argument to the effect that retribution is potentially better a case for you than the LPLA, then I think that's the question. But if you're just saying that both of them you win because recklessness is an exception to this Section 9... That is our position. 2004 applies to both. But you cited a specific statute, 25... 2520 is the retribution statute. 2548 says that... Yes. That's the specific statute. Did you cite that in the district court? Correct. You did. No, no, we didn't. 2548 did. That's the question, then. How can you bring that up now? Well, first of all, our position is that the recklessness sweeps both ways. We win the whole case. The whole case... I got that. But if we're just going to focus on it. So you don't want us to just focus on retribution. You just want us to do the layout I articulated, which is you have this claim, their response is recklessness is a defense to the defense. And that works for both of them and you're done. That is the main issue presented on appeal, without any doubt. And with the district court lost sight of is how the case was pleaded and how it must be adjudicated. So why do we care about 2548? Well, Your Honor, I think it's a further reason why the retribution case survives. But if the court were to conclude that for whatever reason this was waived, still the retribution claim survives because recklessness invalidates the reliance on the contractual defense, both for the LPLA claim and also for the retribution claim. But 2548 added a piece that's a little different, which is it kind of lied to you all knowing they were lying, which is not the same thing necessarily as recklessly manufacturing something. Correct. Okay. All right. But what is the principle error of the district court? As I say, it ignored the fact, it lost sight of the fact about how the case was pleaded and how it must be adjudicated. How is the LPLA claim pleaded? We plead that strictly on the basis of 2800.52B, there are four theories of liability by which a product can be deemed to be unreasonably dangerous. The first is by construction or composition. The second, if there's a faulty design. The third, if there's inadequate warning. The fourth, if there's a failure to comply with the express warranty. We pleaded, Petrobras pleaded three out of the four, one, three, and four. It did so strictly in accordance with the LPLA. It then, it was then open to Vis-a-De to oppose what would otherwise be the prima basis upon the LPLA by raising an affirmative defense. What was its affirmative defense? The affirmative defense were the release and waiver provisions of Article IX of the EPCI contract. Then the ball bounced back, so to speak, to Petrobras. Petrobras could oppose that affirmative defense. It could defeat the affirmative defense. It could do so on the basis of Article 2004 by proving that, in fact, the tether chain was manufactured recklessly. And that's a question of fact. So if we're envisioning jury questions, question one would be the LPLA question. Question two would be the affirmative defense of Article IX, which we may not need because there may not be a fact dispute, but just indulge me. Question three would be then if you found, if you answered yes to questions one and two, then answer question three. Otherwise, not answer question three. Question three would be the recklessness. Exactly right. And if the jury finds, says yes to recklessness, then the contractual defense falls away. And question four would be damages. Falls away. And then it becomes strictly a question of damages. And the principal error in the district court was to look at this issue of recklessness as if it had to be an affirmative claim raised by Petrobras in its complaint. But that is not correct. In its complaint, Petrobras was required only to plead the four theories of liability set out in 2852B of the LPLA. It then, as I say, became incumbent upon Vissenay to plead an affirmative defense. The question of recklessness arises only in the context of the affirmative defense. 2004 speaks to a contractual provision, a contractual provision that purports to waive liability. Here, that contractual defense, the focus of what this appeal is all about, has to be tested. It has to be tested as a matter of fact. What is the matter of fact? The matter of fact is recklessness. The district court — What do you do with Waddick and Cameron? Excuse me? The two cases, Waddick and Cameron. They both support Petrobras's position. They both remanded the cases to the district court for determinations of whether fact-finding would invalidate the purported releases. But your opposing counsel has read those as excluding entirely a cause of action that doesn't have recklessness or intentionality in it. Yes, and I invite the courts, obviously, to read those two cases. They don't support that proposition. And the proposition itself is wrong because 2004 applies in the context of the affirmative defense. It's not required in respect of the affirmative claim. Whether the four theories of liability are correct or not does not depend on the degree of negligence. It doesn't matter whether the negligence is simple negligence. It doesn't matter if it's gross negligence. That issue is not part of the pleading of an LPLA claim. Whether and to what extent, for example, the first theory of liability applied, that the That's not a question of simple or gross negligence. The same for the other three theories of liability. In fact, if you look at 2800.52, Louisiana legislature there said that any fault shown or any liability shown in respect of the four theories of liability is a question of fault, is a finding of fault within the meaning of 2315, Article 2315. So the point is that you look at recklessness not as having to be pleaded by the plaintiff in the complaint. You look at recklessness only in opposition to the affirmative defense raised by this in its answer. And once you do that correctly, then you've balanced how the issue arises and you make necessary the jury determination of whether recklessness exists or not. Judge Haynes, you mentioned earlier, how is this pleaded? You plead the LPLA. You plead one or more of the four theories of liability. You show proximate cause. That's the prima facie case of liability. The degree of negligence is irrelevant. This in a then pleads its affirmative defense. This in a relies upon the release and waiver provisions in the EPCI contract. Fine. It's incital to do that. But then that has to be tested. It has to be tested by the fact finder, in this case the jury. And if the jury looks at what we consider the voluminous evidence, in fact the overwhelming evidence of recklessness, then the affirmative defense collapses. And if the affirmative ---- It's a defense to the defense. If our defense to the defense prevails, then there's a jury question. Is that a fair characterization? Yes, I think so. I think he's exactly right. Complaint, affirmative defense, response to the affirmative defense. That's how this case should be structured. Anything else? You've reserved time for rebuttal. Yes, thank you. Thank you. Okay. Mr. Franklin? Thank you, Your Honor. May it please the Court, Jonathan Franklin for the appellee, Visini Cadenas. I'd like to start, if I might, with the starting of the argument before and just point out that when counsel said that the Redhibition-specific claim was not the subject of the summary judgment papers, he was incorrect. We've cited in our briefs, and I'll repeat it here, at pages 5137 to 38, 5143 to 46, we clearly and unequivocally moved on summary judgment on all claims, both LPLA and Redhibition. In our reply brief, and that's at 5388 to 93, we specifically, again, referred to Redhibition. They filed a response to our summary judgment motion, and they also filed a surreply. In neither of those papers did they ever raise the Redhibition-specific argument that they know. You mean the 2548? Yes. But they did address the recklessness. They addressed that, actually, primarily under Texas law, but they did address that. But in terms of the Redhibition-specific argument in the 2548, that has been unequivocally waived in this case. It was their obligation that they had that argument. When we moved on all claims, they had to present that argument to the district court, and they did not. Okay. Why does the question 1, 2, 3 analysis not work? It doesn't work, Your Honor, because of the plain language of Article 2004. By its plain terms, the statute unambiguously applies only when a contract provision is asserted to exclude or limit liability for gross fault, gross intentional or gross fault. Petrobras has conceded in its brief at page 27, and frankly, what I also heard them concede today is, and this is a quote from their brief, recklessness is irrelevant to a manufacturer's liability under the LPLA. If there is no liability for recklessness, then Article 2004 has no application. But why wouldn't you have a situation where first, before a defendant has to assert an affirmative defense, I mean, you're sitting in the courtroom, and they get up and put on no evidence. You don't need an affirmative defense. You won. All right. So to have an affirmative defense, it kind of says yes, but. All right. So yes, we caused the car accident, but it was more than two years ago using Texas statute of limitations. Okay. So we first put on the evidence of the LPLA. Then we say, okay, yes, but, assuming arguendo, you're right on all that, but we have this Section 9, Article 9, whatever stuff, and then they go, okay, yes, but we have the fact that you were reckless, which undoes those sections. Why isn't it that the order of sort of like negligence, statute of limitations, discovery rule, maybe in trial all that's glommed together, but, you know, I've drafted a lot of jury charges as a trial judge. It would be the one, two, three. That may be an order in an ordinary case, Your Honor, but in this case, they fail because they don't have the 2004 doesn't apply. And it doesn't apply because they have no claim for recklessness or intentional conduct. They had a claim for gross negligence. I think this is important, Your Honor. They asserted in their complaint a claim for gross negligence. The district court dismissed that claim, saying it was not a valid claim. You cannot bring that claim under Louisiana law. And that claim is gone, and they never appealed that claim. So Article 2004 simply has no application, regardless of what step in the process you assert it. It doesn't apply, and they have asserted no case that I'm aware of in which Article 2004 was applied to a claim that was not. Here's what it says. Any clauses know that in advance excludes or limits the liability of one party for intentional or gross fault. Right. The liability. Okay. So, again, we're walking through this where they've been found liable on question one. Let's just assume that argument. Obviously, in question one, none of this matters. No. Say you lose on question one. The jury answers yes. You then have to come up with something. You've come up with something that excludes the liability of that, which is this Article 9. And now they say that's excluding liability, and you guys committed gross fault, what we're calling recklessness, and that's question three. I'm just having trouble why that isn't the right analysis, because that's kind of in my head how I'm seeing the jury questions. I understand, because it doesn't get to the jury, Your Honor. It doesn't get to the jury, Your Honor, because we have raised it as a matter of undisputed fact that these releases govern. They are not arguing on appeal that these releases do not govern. No, I understand that. But the fact that question two might not go to the jury doesn't mean there's not a question two. Okay? It's sort of like statute of limitations that it was more than two years ago might not go to the jury, but that doesn't mean we don't have the discovery rule exception asked to the jury. So you do question one, two, three, and then you say, Your Honor, we should win. We move for directed verdict on question two. You go, yeah, yeah, you're right. But then you still have question three. Maybe it's only conditioned on answering question one, yes. But still, that's still the framework, even though a question can eventually be excluded because it's a matter of law, there's no disputed facts, and so on. Let's start with what they've conceded, Your Honor. On page 27 of the brief, recklessness is irrelevant to a manufacturer's liability under the LPLA. So under question one, whatever liability they might be asserting at your question one stage, it is not liability for recklessness. So the statute doesn't come into play. The statute comes into play only where a clause is applied to exclude or limit liability for intentional or gross fault. They don't have a claim for that. They used to have one. It's gone. They could have brought one, and by the way, I'd just like to emphasize this. They could have brought one, and they strategically didn't. The case law that they've cited, and there are numerous cases that they've cited, there's an exception that allows you to bring a claim for a bad faith breach of contract. That will, in fact, trigger Article 2004. The LPLA does not. And they had a claim for breach of contract in this case. They were assigned the warranties that Petra, excuse me, that my client, Biss and Ikenames, gave to Technib, which was their counterparty. Those warranties were assigned to Petrabras. They asserted those warranties in their original complaint in this case. They then dropped them. They dropped them strategically in order to avoid arbitration in the case. So what they're left with is only the claims that don't depend on recklessness or intentional fault. Article 2004 does not apply. Petrabras is one of the largest and most sophisticated companies in the world, and it negotiated for and agreed to these reciprocal, what are referred to in the industry as knock-for-knock decisions. Well, I get that, but 2004 doesn't have an exception for unless you're really smart, then this exception doesn't apply. They're just saying we don't want people agreeing in advance to give up on, I mean, let's say that the facts showed, and I'm not, I know you would disagree with this if this did make it to a jury. Let's say the facts showed that they said, hey, we know this thing's going to burst open or it's going to fall apart or whatever, but let's just do this manufacturing as recklessly as we can. We'll save a ton of money. We're just going to go out there and do that. Your argument is, oh, well, and that's not what Louisiana says. Louisiana says, no, we're not going to let you in advance give up on that. And so it seems funny to me that the FBLA, which actually is more plaintiff friendly, is now being used against a plaintiff that can show worse than the LPLA, again, assuming, arguendo, all their facts are as they say, which I realize you would argue out the wazoo if it actually went to trial. Well, if they had a claim that depended on it, yes. And this is my point, Your Honor, is that it doesn't just go up. We're not talking about this. No, no. I think that it's important to know that they had other claims they could have presented. And by the way, there are many other circumstances, too. If it was a personal injury, this would not be the same argument for personal injury. That provision of Article 2004 does not depend on the level of culpability. So personal injury, different case. A bad faith breach of contract, which they deliberately didn't assert, different case. It's the word liability, though. Yes. And that's key. Liability is key. And the liability in this case, and again, I'll read it again from their brief. Sorry, Your Honor, I don't want to. I mean, you would – okay. Liability is important. That word in the statute is important, Your Honor. And when they say at their brief, recklessness is irrelevant to a manufacturer's liability, they use that word, under the LPLA. What that means is they are not asserting liability based on recklessness. They could have. And I'll give you another example, which is not this case, but punitive damages. They had a claim for punitive damages. That was dismissed as well. The judge dismissed that, said Louisiana law doesn't permit it in these circumstances. If, however, there were an authorized claim, then that would be a different case. Yes. They might have a claim. But in this case, your argument is, assuming arguendo, these guys went out intentionally, knowingly, and recklessly, ran around welding broken parts together, knowing that could result in what happened here, too bad. That, because the LPLA doesn't encompass that. It does, in fact, encompass that. It just doesn't require proof of that. I'll put it another way. It's not too bad, also, because they have recovered $147.5 million as a result of this incident, pursuant to the very contract that they are now saying is invalid. That's right. Yes, but the McCausland case is a case under this Article 2004, which we have cited, which holds that these kinds of reciprocal, mutual, knock-for-knock provisions that direct each party to look to insurance are not covered by Article 2004. And that's another reason, Your Honor, why this is not the normal case, and this is a case in which they understood exactly what they were doing, and what they were doing was what folks in the industry do, and that is these projects are very large, the risk is very large, and they are saying we're going to manage that risk by saying we're going to procure insurance to cover all of the obligations that we're taking under the pen. Right, but the problem, as I see it, is that's irrelevant to the 2004 analysis. It doesn't say unless there's insurance or something like that. And so if we were to rule your way in this case, it would have effect in cases even where they don't have insurance. And so the question is are we properly construing the statute because I've had the experience, strangely enough, that when we decide case number one, case number two will cite that case. And so it does have impact. Granted, we can't tell Louisiana what to do, but in the meantime people will cite us to Louisiana state courts, and, frankly, if we file a published opinion on this, in our court it will be binding unless and until something changes. So it is relevant what the broader picture is, although justice in the particular case is our first, justice under the law in the particular case is our first. Sure. And I would say, by the way, the McCausland case, which we have cited and discussed at length, that did rely on the text of 2004 to say it's not a release of one party of liability to the other party. It's a mutual release. And it's not an exclusion because there is a — everyone understood that insurance was going to cover all of the losses. That is one way, Your Honor, that this can be narrowly decided on these facts. The other is that they have not asserted any claims for intentional or gross fault, whereas they had a claim. They had a claim they could have asserted for bad faith breach of contract. They deliberately didn't. That's another distinction in this case. Obviously, there's no personal injury. That's another distinction. And what we're dealing with here is ultimately a party that negotiated for and agreed to a broad waiver and indemnity, knowing that it would obtain all of its recovery through insurance. It did, in fact, obtain $147.5 million as a result of this. The provisions that it is now seeking to invalidate are designed exactly so that contractors, small companies like my client, are able to bid on projects like this, where the potential liability is quite large. But the parties here, again, Petrobras and Technip, agreed amongst themselves as a matter of freedom of contract that they were entitled to do that, yes, we understand there's risk in this project, but we are going to manage that risk by each of us, Petrobras on its side, Technip on its side, procuring its insurance. You say that as to all contractual provisions that 2004 applies to. No, I don't. I mean, if there was some sort of other defense like unequal bargaining power, I was forced into this, you held a gun to my head to sign it, we wouldn't get to 2004. We would just deal with the contractual waiver on its own face. So to get to 2004, you have to get past those kinds of, you know, gun to the head situations. I'm not sure, Your Honor. I think that somebody litigating a case like this would probably raise 2004 first. But I'm just saying that you don't need 2004 if you're a legislature in a civil law state if you just are worried about cases of unequal bargaining power and guns to head and that kind of thing. Here, they didn't make an exception for smart people with good lawyers or big companies or whatever, they just said this applies. So, again, we're having to construe the statute as written. I understand that, but, again, I'm only pointing to a cause and I did say that there was a difference with these mutual knock-for-knock provisions, which are not the norm, Your Honor. These are not the norm where you have two sophisticated companies that are agreeing in advance to do this for valid reasons that relate to the projects. If I might quickly, if I might turn to the choice of law issue just because. Before you do, just one quick question. Yes, absolutely. In the alternative to affirmance, which I know is your request, what is your client's position on certifying these issues to the Louisiana Supreme Court? Well, I think in the first instance, and I guess it gets to the choice of law, we actually think Texas law applies and we wouldn't be averse to certifying the question of Texas law. It's difficult for us to say certify to Louisiana law when we don't think Louisiana law governs here. However, having said that, if the Court believes that the Louisiana law provisions do not invalidate these, this contract, that's the end of this case because they've got another issue. So that's affirmance straight. We do think Texas law does apply, though. In Grand Isle, I would turn to the Court's, and I don't have that much time, the Court's en banc decision in Grand Isle, which says that there is a different rule for contractual disputes, even those that touch on OXLA. And that's a different rule from the tort claim. So the Court, in its previous opinion, did hold that Louisiana law governs the underlying tort claims. But the Grand Isle analysis clearly points to Texas law on the contract dispute that we have here. And the argument that the other side is making right now is that, oh, no, Grand Isle doesn't apply because this is the same case, because it's not brought as a contract case. It's brought as a tort case with a contract defense. That really makes no sense, Your Honor, and it makes no sense for the following reason. We could have brought a standalone, if we'd done it before they filed, we could have brought a standalone declaratory judgment or action on this contractual provision saying we aren't liable to them. And under their analysis, then there would be a different choice of law for the contract if we brought it as a standalone case versus ---- No. It would be if they were suing on the contract. If they said under the contract you were supposed to give us a product that worked and you didn't, and therefore we're suing you on the contract, then you'd have a contract case with a contractual defense. But they're saying there were physical property damage damages, which is a tort case, and they're bringing it as a tort case saying you violated the Louisiana Price Liability Act, blah, blah, blah. And so as a tort case, I mean, even when you're doing a declaratory judgment, if you just are saying you file a declaratory judgment on I didn't cause the car wreck, that's still a tort case. I understand that, Your Honor, but ---- If you call it a declaratory judgment. We have cited cases where the Court has applied and should apply different choices of law to different parts of the dispute. In this case, this is a contractual dispute. The parties chose Texas law to the extent that maritime law didn't apply to it, apply not only to the ---- Can a defense change, a defense to liability, whether framed as a declaratory judgment or framed as you are the defendant, change the nature of the case? You can't change the ---- The plaintiff gets to pick their case, for better or for worse. So we've cited cases, for example, tortious interference with contract cases, where the tortious interference law is different from the law underlying the contract that's being tortiously interfered with. Same here. You have the underlying tort claims. That's why Louisiana law does apply to their underlying. They have an LPLA and a reddition ---- But that's different plaintiffs because you can't sue for tortious interference against the party to the contract. So you would have different parties there. You would have the person that breached and you would have the person who tortiously interfered. My only point there is to say that different laws can apply to different parts of the case depending on whether or not the contract is ---- So what Grand Isle says is contractual disputes. And what I'm saying is that cannot be the case because there's only one contract. And if the dispute arises as a defense to their claim, the Court needs to construe the contract. If the dispute were to arise in a standalone declaratory judgment case, same dispute, they would say under Grand Isle, because we're suing on the contract, that a different choice of law would apply. That can't be right. It has to be one choice of law ---- I understand what you're responding to. But did you answer Judge Ho's question? It's the summa argumenta we think Louisiana law governs the whole case. Right. Then should we certify to the Louisiana Supreme Court the question? I'm reluctant because I don't think that Louisiana law applies. I guess if Your Honors have determined that Louisiana law does apply, then I suppose it's up to the Court in its discretion to certify. My only answer was we don't think Louisiana law does. I know that. I know this is really hard for lawyers to do. You assume argumenta is something you don't agree with. But we're still asking that because, yes, we have the discretion to certify the question. That doesn't mean we're not interested in your thoughts. If you don't have any thoughts, that's fine. I don't have a definitive position on Louisiana law being certified. I do on Texas law. However, obviously, it is up to the Court in its discretion always. And we do not deny the Court does have the discretion to do that. And my only point in bringing up Texas law is we do think Texas law applies. And then the easier way, again, to resolve this case is just to simply say Texas law applies. And they've made no argument under Texas law. And the district court did find in the alternative that Texas law did apply. Excuse me, not that it applied. That if Texas law applies, it would be valid. They have not challenged that at all. So if the Court, under its affirmative duty to decide choice of law, determines that Texas law applies, that's the end of the case also. The Court doesn't need to get into any of these issues. And we think the Court should affirm. Do you have your argument? Mr. McDermott, do you agree with that, that if we were to decide, and I know you don't want us to decide that Texas law applies, you don't need to say that, but if we did decide that, are we done? No, Texas law is no different from Louisiana law. It's a false conflict. Yes, the Court was correct to apply Louisiana law. If, at the end of the day, if you go through the Grand Isle analysis and if you were to conclude, arguendo, that Texas law applied, any change, any difference? No. Why not? Because it's a false conflict. The Zachary case on this subject, tort liability in the face of contractual waivers, is no different from Article 1004. Texas law and Louisiana law as to the enforceability of a contract, which is contrary to public policy, is no different. In Zachary, the Court cited Article or Section 195.1 of the Restatement of Contracts, virtually identical to the Article of 2004. So what's the point of getting to Texas law? There is no point. The false conflict should stop the analysis under Louisiana law at 2004. And, in fact, I think it's the law of the case, because when this case was first before this Court and when the Court concluded that Louisiana law should apply, the Court acknowledged that the first of the three TLP factors, where did the controversy arise? The Court concluded, correctly, that it arose on the continental shelf. And, of course, that's correct. And the district court addressed this issue of can you import into where the controversy arose a defense, an affirmative defense? And the district court said, correctly, no, you can't do that. You have to look at the plaintiff's claim, the underlying tort claim. And, in fact, there has been no case cited where the law that would dispose of the Oaksland claim was pleaded defensively, irrespective of how the plaintiff pleaded its case. And that's our point, that the district court was correct, that there is no grand aisle analysis that gets you to Texas law, but so what? On the first point that was raised, the question was, well, recklessness wasn't pleaded in the complaint. Well, that is precisely the point. There was no need for Petropas to plead any degree of negligence in the complaint. Your jury questionnaire analysis is entirely correct. You have to plead the defense to the defense once I raise it? Yes. Well, you have to oppose it, which, of course, we've done. But the idea that we say recklessness didn't have to be pleaded is because negligence does not have to be pleaded in an LPLA claim. And that's the fundamental point. And that exposes the fundamental error, we say, in a district court's opinion, because it, for whatever reason, acknowledging, mind you, the district court acknowledged the force of 2004 to invalidate release and waiver provisions in the face of gross negligence. The district court accepted that. But then he went off the rails, so to speak, by saying, well, even though that's true, it wasn't pleaded and there's no cause of action and there's no claim for recklessness. Well, that's an error of law because there was no necessity to plead any degree of negligence in the complaint. As I say, negligence arises only in the context of the affirmative defense. And that requires a jury trial. Well, it requires more than negligence. It requires potential or a gross fault. Yes, which is quintessentially a question of fact, as this Court has already determined in the Houston case. Okay. I think we have your argument. Thank you. Thank you very much. Thank you to both sides. We will take a 10-minute break at this time. Thank you. Thank you. Thank you. Thank you. Thank you.